IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| PAUL BERGER, directly and derivatively on behalf of INCOME OPPORTUNITY REALTY INVESTORS, INC., | § § § § § | |
| Plaintiff, | § § | |
| | § | Civil No. 3:19-CV-00286-E |
| v. | § § | |
| TRANSCONTINENTAL REALTY INVESTORS, INC., et al., | § § § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court are two motions to dismiss Plaintiff Paul Berger's "Shareholder's Verified Derivative and Class Action Complaint"— one filed by Defendants Transcontinental Realty Investors, Inc., American Realty Investors, Inc., Pillar Income Asset Management, Inc., Daniel J. Moos, Gene E. Bertcher, Louis J. Corna, Ted R. Munselle, Henry A Butler, Robert A. Jakuszewski, and Raymond D. Roberts Sr. (Doc. 28) and one filed by Defendants Gene E. Phillips and Mickey N. Phillips (Doc. 34). For reasons that follow, the Court grants each motion in part and denies each motion in part.

**Background**

Plaintiff Berger brings this lawsuit directly and derivatively on behalf of nominal defendant Income Opportunity Realty Investors, Inc. (IOR). As

1

alleged in Plaintiff's complaint, he is an IOR stockholder. Defendant Transcontinental Realty Investors (TCI) owns 81.25% of IOR's shares. The remainder of IOR shares are owned by public investors. TCI is controlled by Defendant American Realty Investors (ARL). IOR, TCI, and ARL are all Nevada corporations with corporate offices or their principal place of business in Dallas, Texas. Individual defendants Daniel J. Moos, Gene S. Bertcher, Louis J. Corna, Ted R. Munselle, Henry A. Butler, Robert A. Jakuszewski, and Raymond D. Roberts Sr. are officers and directors of IOR. They are also officers and directors of TCI and ARL.

Plaintiff alleges that Defendant Gene Phillips, a Texas real estate investor, secretly controls IOR, TCI, and ARL through Defendant Pillar Income Asset Management. The complaint further alleges Gene secretly controls Pillar and that Pillar was set up to unlawfully funnel money to other companies Gene controls. Defendant Mickey Phillips is Gene's brother, and Mickey, who is one of Pillar's two directors, allegedly aids and abets Gene. Plaintiff alleges Gene's secret control of IOR, TCI, ARL, and Pillar was discovered by a Texas bankruptcy judge.

The complaint asserts that IOR has falsely represented itself as a company involved in real estate investment and land development. SEC filings informed investors that an independent advisor, Pillar, was "locating, evaluating, and recommending real estate and real estate-related investment opportunities" for IOR. Pillar was paid significant fees for these "alleged

services." Plaintiff alleges that IOR and its shareholders are victims in an illegal scheme under which related corporations and individuals funnel funds from IOR up a "daisy chain" and steal the funds for other participants, namely, TCI, ARL, and the Phillips. IOR has had its assets removed, never to be returned, under the guise of "purportedly legitimate corporate transactions." Defendants have left IOR "bereft of the ability to engage in any sort of new business or pay dividends." For the quarter ending September 30, 2018, IOR reported $1,000 in cash on its balance sheet, which Plaintiff claims was the result of having a minimum of $32 million funneled to TCI and "its cohorts" in less than two years. Further, 85.7% of all IOR assets have allegedly been converted for the use of TCI. The "looting" of IOR accelerated in 2017 and 2018 when IOR came into a large sum of money as a result of a note maturing and a real estate sale.

Plaintiff brings this lawsuit in part derivatively for the benefit and protection of IOR. He alleges that a demand on the board of directors to bring this action would have been futile. In the alternative, Plaintiff seeks a judgment on behalf of all public IOR stockholders. Plaintiff's complaint alleges 18 counts, which he groups into seven categories. The first five counts are derivative claims on behalf of IOR which relate to "all funds and properties which belonged to IOR and were wrongfully taken by TCI": (1) breach of fiduciary duty against TCI; (2) unjust enrichment against TCI; (3) breach of fiduciary duty against Munselle, Butler, Jakuszewski, and

3

Roberts (collectively "the TCI/IOR Directors"); (4) breach of fiduciary duty and aiding and abetting the breaches of others against Moos, Bertcher, and Corna (collectively "the Management Defendants"); and (5) breach of contract against Pillar and tortious interference with contract against Gene and Mickey. The next two counts are derivative claims related to "non-payment of the Acquisition Note": (6) breach of contract against TCI; and (7) breach of fiduciary duty against the TCI/IOR Directors. Count 8 is a derivative claim for breach of fiduciary duty against Munselle, Butler, and Jakuszewski and involves the 2010 sales of IOR's investments in two businesses. Count 9 is another derivative claim for breach of contract against TCI and involves "the Sham Centura Land Deal." Count 10 is a derivative claim against TCI and the TCI/IOR directors for breach of fiduciary duty related to "the Three Hickory Sale." Plaintiff's next three counts are derivative claims related to "the Mercer Crossing Sales Proceeds": (11) breach of fiduciary duty against TCI; (12) civil conspiracy against all Defendants but IOR; and (13) unjust enrichment against TCI. The next three counts are derivative claims related to "the United Housing Foundation Notes Payoff": (14) unjust enrichment against TCI; (15) breach of fiduciary duty against TCI; and (16) civil conspiracy against all Defendants but IOR. Finally, in the alternative to the derivative claims, Plaintiff asserts two class action claims: (17) declaratory judgment that a de facto dividend has been

4

distributed; and (18) declaratory judgment that a de facto liquidation is underway.

**Motion to Dismiss Under Rule 12(b)(2)**

The Court first addresses the Motion to Dismiss filed by the Phillips Defendants because it contains a jurisdictional argument.[1] Mickey moves to dismiss the claims against him for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2).

Plaintiff's complaint alleges that each individual defendant has minimum contacts with this District sufficient to justify the exercise of personal jurisdiction over them. As part of Plaintiff's jurisdictional allegations, the complaint alleges that Mickey is a citizen of the State of Texas and one of two directors of Defendant Pillar. Pillar is a Nevada corporation with its principal place of business in Dallas, Texas. In his position as a director of Pillar, Mickey allegedly "approved, directed, and carried out the looting of IOR's cash assets and their illicit transfer to TCI."

In his motion to dismiss for lack of personal jurisdiction, Mickey contends that Plaintiff's allegation that he is a Texas citizen is incorrect. Mickey attached his declaration that asserts he is a South Carolina citizen and

---

[1] Gene Phillips died after he filed his motion to dismiss. Pending before the Court is Plaintiff's opposed motion to substitute Bradford Phillips, as Independent Executor of Gene Phillips's Estate, as a defendant in place of Gene Phillips. An order on that motion is forthcoming.

5

has never been a Texas citizen. Mickey maintains that he is not subject to personal jurisdiction in Texas.

In his response, Plaintiff argues that his information about Mickey being a Texas citizen came from Gene's answer in another case filed in this District. *See Clapper v. Am. Realty Investors, Inc.*, No. 3:14-cv-02970 (N.D. Tex.) ("Mickey Phillips resides . . . in the jurisdiction of the Northern District of Texas"). Mickey is not bound by the factual assertion in his brother's pleading in a separate case. *See Davis v. A.G. Edwards & Sons, Inc.*, 823 F.2d 105, 108 (5th Cir. 1987) (factual assertions in pleadings are judicial admission conclusively binding on party that made them). Plaintiff maintains that even if Mickey is a South Carolina resident, the Court still has personal jurisdiction over him.

When, a nonresident defendant presents a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing the district court's personal jurisdiction over the defendant, though he need only make a prima facie case at the Rule 12(b)(2) stage. *In re DePuy Orthopaedics, Inc.*, 888 F.3d 753, 778 (5th Cir. 2018). The Court accepts the plaintiff's uncontroverted, nonconclusory factual allegations as true and resolves all controverted allegations in the plaintiff's favor. *Carmona v. Leo Ship Mgmt., Inc.*, 924 F.3d 190, 193 (5th Cir. 2019). The Court may determine the jurisdictional issue by receiving affidavits, interrogatories, depositions, and

other recognized methods of discovery. *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985).

A federal court sitting in diversity in Texas may exercise personal jurisdiction over a foreign defendant if permitted by (1) the Texas long-arm statute, and (2) the due process clause of the Fourteenth Amendment. *Diece-Lisa Indus., Inc. v. Disney Enters., Inc.*, 943 F.3d 239, 249 (5th Cir. 2019). Because the Texas long-arm statute extends to the limits of federal due process, the two-step inquiry collapses into one federal due process analysis. *Id.* Federal due process is satisfied if two requirements are met: (1) the nonresident purposely availed himself of the benefits and protections of the forum state by establishing "minimum contacts" with the state; and (2) the exercise of jurisdiction does not offend "traditional notions of fair play and substantial justice." *Id.* at 249–50. The "purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person." *Id.* at 250 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, (1985)). A defendant's "minimum contacts" may give rise to either general or specific jurisdiction. *Id.*

Supreme Court decisions have recognized two types of personal jurisdiction: "general" (sometimes called "all-purpose") jurisdiction and "specific" (sometimes called "case-linked") jurisdiction. *Bristol-Myers Squibb Co. v. Superior Court of Ca.*, 137 S. Ct. 1773, 1779–80 (2017). "For an

7

individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home." *Id.* at 1780 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011)). A court with general jurisdiction may hear *any* claim against that defendant, even if all the incidents underlying the claim occurred in a different State. *Id.* at 1780. But "only a limited set of affiliations with a forum will render a defendant amenable to" general jurisdiction in that State. *Id.* (quoting *Daimler AG v. Bauman,* 571 U.S. 117, 137 (2014)). General jurisdiction exists when a nonresident defendant's contacts with the forum state are continuous and systematic. *Sangha v. Navig8 ShipManagement Private, Ltd.*, 882 F.3d 96, 101 (5th Cir. 2018). General jurisdiction is difficult to establish and requires extensive contacts between a defendant and forum. *Id.* at 101–02.

Specific jurisdiction is very different. *Bristol-Myers*, 137 S. Ct. at 1780. For a court to exercise specific jurisdiction, the lawsuit must arise out of or relate to the defendant's contacts with the forum. *Id.* In other words, there must be "an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Id.* (quoting *Goodyear,* 564 U.S. at 919). For this reason, "specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Id.*

Mickey Phillips contends he is not subject to either general personal jurisdiction or specific personal jurisdiction in Texas. Regarding specific jurisdiction, Mickey argues there are no allegations that any of Plaintiff's claims against him arose out of or were related to his telephonic participation in Pillar board meetings. Citing a district court case out of the Eastern District of Texas, *Ragan & Massey, Inc. v. Voluntary Purchasing Groups, Inc.*, Mickey asserts that this fact alone defeats specific jurisdiction. *See* No. 4:09-cv-00039, 2009 WL 3157468 (E.D. Tex. Sept. 28, 2009). At issue in *Ragan & Massey* was whether the district court had personal jurisdiction over a nonresident defendant who was a board member of a Texas corporation. That court granted the defendant's motion to dismiss. In doing so, the judge stated that nothing indicated that the nonresident defendant's allegedly tortious behavior occurred at or during corporate board meetings in Texas. *Id.* at *6. Mickey omits the fact that the judge went on to also state that nothing indicated the nonresident defendant directed his tortious behavior toward residents of the state of Texas. *Id.*; *see* TEX. CIV. PRAC. & REM. CODE ANN. § 17.042(2) (nonresident does business in this state if he commits tort in whole or in part in Texas).

Here, Plaintiff alleges that Mickey directed tortious behavior toward Texas. One of Plaintiff's claims against Mickey is for tortious interference with contract. It is related to a claim for breach of contract against Pillar. The contract at issue is a Cash Management Agreement (CMA) between IOR

9

and Pillar. The complaint alleges that Pillar is ostensibly IOR's "external Advisor and Cash Manager." In that capacity, Pillar is supposed to locate, evaluate, and recommend real estate investment opportunities for IOR. Plaintiff alleges that Pillar does not do these things. Under the CMA, all of IOR's funds are delivered to Pillar, and Pillar is responsible for payment of all payables and investment of all excess funds. Plaintiff alleges Pillar did not manage IOR's cash. According to Plaintiff, IOR had no excess cash, yet Pillar labeled all funds IOR received as "excess." Pillar illicitly transferred IOR's funds to TCI and has left IOR destitute. The complaint refers to Pillar as a "sham vehicle" and alleges that Pillar is controlled by Gene and Mickey, who both allegedly caused and directed Pillar's breaches of contract. Gene exercises control over Pillar through Mickey, one of Pillar's two directors. As a director, Mickey "approved, directed, and carried out the looting of IOR's cash assets and their illicit transfer to TCI."

It is well settled that specific jurisdiction may arise without a nonresident defendant ever stepping foot upon the forum state's soil. *Bullion*, 895 F.2d 213, (5th Cir. 1990). If a nonresident's alleged tortious actions are specifically aimed at the forum state, and the tortfeasor knows that the brunt of the injury will be felt by a particular resident in the forum, the tortfeasor must reasonably anticipate being haled into court there to answer for his tortious actions. *RA Global Servs., Inc. v. Apps*, No. 3:07-cv-1562-L, 2007 WL 4292780, *5 (N.D. Tex. Dec. 6, 2007). Plaintiff's complaint alleges that

Mickey used a Texas business, Pillar, to direct tortious activity toward another Texas business, IOR. As such, Mickey's actions were aimed at Texas, with the brunt of the injury to be felt by a Texas resident. Mickey Phillips's motion to dismiss for lack of personal jurisdiction is denied.

**Motions to Dismiss Under Rule 12(b)(6)**

In addition, both Phillips Defendants move to dismiss Plaintiff's three claims against them for failure to state a claim under Rule 12(b)(6). They also join in the Rule 12(b)(6) motion to dismiss filed by TCI, ARL, Pillar, the TCI/IOR Directors, and the Management Defendants. To survive such a motion, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Court takes well-pleaded factual allegations in the complaint as true, but does not credit conclusory allegations. *Chhim v. Univ. of Tex. at Austin*, 336 F.3d 467, 469 (5th Cir. 2016) (citing *Iqbal*, 556 U.S. at 678). A claim has facial plausibility when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* In reviewing a motion to dismiss under Rule 12(b)(6), the Court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to plaintiff. *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019).

The Court begins with Plaintiff's Count 6, a derivative claim for breach of contract against TCI. Plaintiff alleges that in 2009, TCI purchased IOR shares from Syntek West. Syntek West owed IOR $17.8 million. TCI purchased the stock by assuming Syntek West's debt to IOR. Plaintiff alleges TCI never repaid the note to IOR. The complaint further alleges that TCI was "provided forbearance on repayment to the present" and alleges that TCI prevented IOR from declaring the note due and payable. Plaintiff has failed to plausibly allege the element of breach. Plaintiff alleges TCI did not pay the note, but also indicates that TCI has been provided forbearance of its obligation to pay. The Court grants the motion to dismiss as to this claim.

Count 9 is another derivative breach of contract claim against TCI. The claim involves "the sham Centura land deal." The complaint alleges that in 2005 IOR purchased Centura land from TCI and paid with cash and notes receivable held by IOR. The cash was obtained by financing the Centura land. The agreement included a "put option" under which IOR had the right to resell the property to TCI for a certain price "plus a preferred return of 9% per annum." Because of "the likelihood that [IOR] would exercise its put option," this transaction was treated as a "financing transaction." By mid-2011, the put option had not been exercised. In an attempt to evade the sale terms, TCI arranged for a sham transaction in which the land was transferred to ABCLD Real Estate, LLC. IOR allegedly never received payment from ABCLD or its

owner, a "Phillips cohort." According to Plaintiff, "This was all reported in a misleading manner in IOR's Form 10-K."

Plaintiff alleges TCI cannot be permitted to evade its "put" obligations and the "2005 contract cannot in equity be allowed to be satisfied by the ABCLD mock purchase." Rather, the contract should "be treated as still owed and payable, with principal and interest now totaling $39 million, which TCI must be ordered to pay." Again, the element of breach has not been plausibly alleged. The complaint seems to allege IOR should have exercised the put option, but it is not clear how failure to exercise something described as "an option" amounted to a breach of contract. The Court grants the motion to dismiss this claim.

The Court turns to Plaintiff's claims for breach of fiduciary duty against the TCI/IOR Directors. In Count 7, Plaintiff asserts a derivative claim against the TCI/IOR Directors for breach of fiduciary duty that is related to the note that is the subject of Count 6. The complaint alleges that the TCI/IOR Directors owe an undivided fiduciary duty of loyalty to IOR. Based on the alleged failure of these Defendants to declare the note due or to attempt to collect on the note, Plaintiff alleges that their actions have "been taken to enrich TCI, are in bad faith, and disloyal." The parties agree this claim is under Nevada law.

Defendants assert Plaintiff's allegations fall short of stating a claim for breach of the fiduciary duty of loyalty. Such a duty requires the board and its

13

directors to maintain, in good faith, the corporation's and its shareholders' best interests over anyone else's interests. *In re Amerco Derivative Litig.*, 252 P.3d 681, 700–01 (Nev. 2011). To hold a director or officer individually liable for breach of the fiduciary duty of loyalty, a shareholder must prove the breach involved intentional misconduct, fraud, or a knowing violation of law. *Id. at* 701. As noted by Defendants, the complaint does not contain any factual allegations about the decision to forbear collection of the note. Plaintiff merely alleges that the TCI/IOR Directors "have extended the 13-year-old Acquisition Note indefinitely, and have not declared it due, or tried to collect it." There are no specific allegations regarding the actions or decisions of any of the individual TCI/IOR Directors in connection with the note. There are no factual allegations to establish that each of the four TCI/IOR Directors committed intentional misconduct, fraud, or a knowing violation of the law. Plaintiff has failed to plead a plausible claim for breach of the fiduciary duty of loyalty.

Plaintiff's Count 8 fails for the same reasons as Count 7. Count 8 is another claim for breach of the fiduciary duty of loyalty against Directors Munselle, Butler, and Jakuszewski. The claim involves the sales of IOR's investments in two particular businesses. In both transactions, IOR was allegedly paid with a note. The complaint alleges that "IOR's SEC filings do not indicate any attempt by the TCI/IOR Directors to collect these sums." It further alleges that because Munselle, Butler, and Jakuszewski repeatedly

failed to collect sums due, "it may be inferred that the failure to collect on these notes was purposeful, and in breach of the duty of loyalty." There are no specific allegations regarding the actions or decisions of any of these individual Directors regarding collection of these two notes. Again, Plaintiff has made no nonconclusory factual allegations to establish that these defendants committed intentional misconduct, fraud, or a knowing violation of the law. Plaintiff has failed to plead a plausible claim for breach of the fiduciary duty of loyalty in Count 8.

In Count 10, Plaintiff asserts another claim for breach of fiduciary duty against the TCI/IOR Directors and also against TCI. This count involves the sale of a property known as Three Hickory. Plaintiff asserts that in 2010, IOR sold Three Hickory to Fenton Real Estate, "a related party under common control." IOR received a note for $1.2 million. IOR deferred recognition of the sale in part due to "inadequate initial investment and questionable recovery of investment cost." In 2014, Three Hickory was sold back to IOR. IOR had to pay for the property, when it had never received any money for the original sale to Fenton. The complaint alleges breach of fiduciary duty because "TCI foisted on IOR a worthless property." TCI was able to do so because of its power over IOR and because the TCI/IOR Directors were "complicit in this action, approved it, and conspired in it." As with Plaintiff's other counts of breach of fiduciary duty, the allegations are conclusory and not supported with factual allegations that demonstrate the actions these

Defendants took regarding this sale. Plaintiff has not plausibly alleged that they engaged in intentional misconduct, fraud, or a knowing violation of law. The Court grants the motion to dismiss as to this claim.

In Counts 12 and 16, Plaintiff asserts derivative claims against all Defendants but IOR for civil conspiracy. Count 12 involves "the Mercer Crossing transaction." IOR had a land development investment known as Mercer Crossing. It later sold the land to an unrelated party, but IOR did not see any of the proceeds. The complaint alleges Defendants conspired to deprive IOR of the money from the sale by funneling the money to TCI. Count 16 involves the "United Housing Foundation Notes Payoff." The complaint asserts that in 2017, IOR received $7.1 million from the payoff of two notes from the United Housing Foundation. These funds were allegedly immediately seized by TCI and never accounted for or returned to IOR.

Under each count, the complaint sets out the elements of a civil conspiracy: (1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as a proximate result. *See Agar Corp. v. Electro Circuits, Int'l, Inc.*, 580 S.W.3d 136, 141 (Tex. 2019). But it does not connect these elements to any factual allegations surrounding the transactions. For example, under both civil conspiracy counts, the complaint alleges that the "acts as alleged could not have been accomplished without each Defendant named in this Count playing a role in an agreed course of

action." There are no specific allegations regarding the unlawful overt acts each of the multiple Defendants took, nor any factual allegations about a meeting of the minds. There are only conclusory statements such as the "Management Defendants undertook the necessary partial and administrative steps needed to effectuate the transfer" of United Housing proceeds to TCI. Plaintiff has failed to state a plausible claim for civil conspiracy. The Court grants the motions to dismiss as to Counts 12 and 16.

As to Plaintiff's remaining counts, the Court concludes Plaintiff has pleaded specific facts which establish a plausibility of entitlement to relief on those causes of action. In sum, the Court grants the Phillips Defendants' motion to dismiss in part as to Counts 12 and 16 and denies the motion in all other respects. The Court grants the other Defendants' motion to dismiss as to Counts 6 through 10, 12, and 16, and denies it as to all other counts. Rather than dismiss Plaintiff's claims with prejudice, the Court will allow Plaintiff to file an amended complaint within 30 days from the date of this order. *See Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002) (court should allow plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, "unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling

or unable to amend in a manner that will avoid dismissal").

**SO ORDERED**.

Signed March 31, 2020.

                                          _____
                                          Ada Brown
                                          UNITED STATES DISTRICT JUDGE