IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| PAUL BERGER, directly and derivatively on behalf of INCOME OPPORTUNITY REALTY INVESTORS, INC., | § § § § § | |
| Plaintiff, | § § | |
| | § | Civil No. 3:19-CV-00286-E |
| v. | § § | |
| TRANSCONTINENTAL REALTY INVESTORS, INC., et al., | § § § | |
| Defendants. | § § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are two motions that involve Plaintiff's claims against one of the Defendants in this case, Pillar Income Asset Management, Inc.: (1) Defendants' Motion to Dismiss Amended Complaint (Doc. 102), and (2) Plaintiff's Motion for Partial Summary Judgment Against Pillar as to Count Seven of the First Amended Complaint (Doc. 107). For reasons that follow, the Court grants the motion to dismiss and finds that the motion for summary judgment is therefore moot.

### BACKGROUND

Plaintiff Berger brings this lawsuit directly and derivatively on behalf of nominal defendant Income Opportunity Realty Investors, Inc. (IOR). Plaintiff is an IOR stockholder. As alleged in his "Shareholder's Verified First Amended Derivative and Class Action Complaint," Defendant Transcontinental Realty Investors (TCI) owns 81.25% of IOR's shares and 269,311 of IOR shares are held by companies related to TCI, such that IOR is 87.58% owned by "controlling affiliates." The remainder of IOR shares are owned by public investors.

1

TCI is controlled by Defendant American Realty Investors (ARL). Individual defendants Daniel J. Moos, Gene S. Bertcher, Louis J. Corna, Ted R. Munselle, Henry A. Butler, Robert A. Jakuszewski, and Raymond D. Roberts Sr. are or were officers and directors of IOR at the relevant time. The majority of IOR officers and directors are also officers and directors of TCI and ARL. Plaintiff alleges that Defendant Gene Phillips, a Texas real estate investor, secretly controlled IOR, TCI, and ARL through Defendant Pillar. The complaint further alleges Phillips secretly controlled Pillar and that Pillar was set up to unlawfully funnel money to other companies Phillips controlled.[1]

Plaintiff alleges IOR falsely represented itself as a company involved in real estate investment and land development. SEC filings informed investors that an independent advisor, Pillar, was "locating, evaluating, and recommending real estate and real estate-related investment opportunities" for IOR. Pillar was paid significant fees for these "alleged services." Plaintiff alleges that IOR and its shareholders are victims in an illegal scheme under which related corporations and individuals funnel funds from IOR up a "daisy chain" and steal the funds for other participants, namely, TCI, ARL, and Phillips and his brother. IOR has had its assets removed, never to be returned, under the guise of "purportedly legitimate corporate transactions." Defendants have left IOR "unable to engage in any sort of new business or pay dividends." As of December 31, 2020, IOR reported $12,000 in cash on its balance sheet, which Plaintiff claims was the result of having a minimum of $90 million "upstreamed" to TCI. Further, 86.7% of all IOR assets have allegedly been converted for the

---

[1] Gene Phillips died after the original complaint was filed. Bradford Phillips, the Independent Executor of the estate, has been substituted as a defendant.

use of TCI. Plaintiff alleges 99.99% of IOR's assets are passively "invested" in securities of affiliates.

Plaintiff brings this lawsuit derivatively for the benefit and protection of IOR. He alleges that a demand on the Board of Directors to bring this action would have been futile for a number of reasons, including that the majority of IOR Board members are active wrongdoers who simultaneously serve as directors of TCI and ARL against whom IOR is seeking redress and have concealed and misrepresented who really controls IOR. In the alternative to his derivative claims, Plaintiff brings a class action on behalf of himself and all other similarly situated public IOR stockholders.

Plaintiff's original complaint alleged 18 counts. In ruling on previous motions to dismiss, the Court concluded that several counts failed to state a claim. The Court allowed Plaintiff the opportunity to replead these claims. Plaintiff chose not to, but has filed an amended complaint that asserts four new derivative claims against Defendant Pillar. These new claims are the subject of Pillar's Motion to Dismiss.

## MOTION TO DISMISS UNDER RULE 12(B)(6)

Pillar moves to dismiss Counts Five through Eight of the amended complaint under Federal Rule of Civil Procedure 12(b)(6). To survive such a motion, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Court takes well-pleaded factual allegations in the complaint as true, but does not credit conclusory allegations. *Chhim v. Univ. of Tex. at Austin*, 336 F.3d 467, 469 (5th Cir. 2016) (citing *Iqbal*, 556 U.S. at 678). A claim has facial plausibility when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is

liable for the misconduct alleged. *Id.* In reviewing a motion to dismiss under Rule 12(b)(6), the Court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to plaintiff. *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019).

The following background and allegations are relevant to Counts Five through Eight. In April of 2011, IOR and Pillar entered into a Cash Management Agreement ("CMA") and an Advisory Agreement. The Advisory Agreement provides that, subject to the supervision of the Board of Directors, the Advisor, Pillar, will be responsible for the day-to-day operations of IOR and shall provide services relating to IOR's assets, operations, and business plan as may be appropriate. The CMA acknowledges that under the terms of the Advisory Agreement, Pillar is charged with the responsibility of administering IOR's day-to-day investment operations. The CMA provides for the establishment of a depository account with Pillar into which IOR's cash and cash equivalents shall be deposited. The funds shall be held by Pillar in trust for IOR to "better employ such funds . . . in connection with the investment objections and management" of IOR's investment activities. The CMA provides for Commercial Property Rental Accounts (CPRA) established for receipt of funds from IOR's commercial properties and for Property Rental Accounts (PRA) established for receipt of funds from IOR's residential properties. And it provides for a Top Level Operating Account, which is described as the basic depository for excess funds from all IOR accounts. The CMA states that the Top Level Operating Account shall be a depository for all excess funds from the CPRA and PRA accounts, as well as a funds source for fund shortages from the CPRA and PRA accounts, a depository for incoming wire transfers related to operations, and a funds source for disbursements related to operations. All excess funds from the CPRA and PRA

accounts shall be swept into the Top Level Operating Account at least two times per week. At all times, all funds in these accounts remain IOR property. Under the CMA, Pillar is responsible for investment of "any excess funds in any such account(s), which investments shall bear interest at *Wall Street Journal* Prime Rate plus 1% per annum." Such excess funds may be invested by Pillar in such manner as it deems appropriate.

Plaintiff alleges that since 2011, IOR funds, which have not been designated by the Board as "excess funds," have been invested almost exclusively with TCI. Plaintiff alleges Pillar has used the CMA to transform IOR into an investment company. IOR's most recent annual report states, "Our primary business is currently investing in mortgage receivables."

Plaintiff's Counts Five and Six involve the Investment Company Act of 1940 ("ICA"), 15 U.S.C. § 80a *et seq*. In Count Five, Plaintiff asserts a claim against Pillar for violations of the ICA. Plaintiff alleges 99.9% of IOR funds are held in passive investments, rendering it an unregistered investment company under the ICA. As such, IOR is in violation of the ICA because it may not engage in business in interstate commerce and is barred from related-party transactions without SEC consent. Plaintiff seeks rescission of the CMA and the return of all funds to IOR. In Count Six, which repeats the previous allegations of ICA violations, Plaintiff asserts a claim for breach of the CMA due to Pillar's operating IOR in a manner that violated the ICA. Plaintiff again seeks rescission of the contract.

Count Seven is another claim for breach of the CMA. The CMA permits investment of only "excess funds." Plaintiff alleges none of the funds Pillar invested in TCI have been designated as excess funds. Count Eight is for breach of a bond provision in the Advisory Agreement.

As an initial matter, Pillar argues that the new claims should be dismissed because Plaintiff has failed to allege with particularity facts sufficient to show that a demand on IOR's Board would be futile. It is generally held that shareholders may sue derivatively, without first demanding that the directors enforce the corporate cause, when the circumstances would render such demand a futile gesture. *Clark v. Lomas & Nettleton Fin. Corp.*, 625 F.2d 49, 53 (5th Cir. 1980); *see* FED. R. CIV. P. 23.1(b). "The purpose of the demand-futility analysis is to assess whether the board should be deprived of its decision-making authority because there is reason to doubt that the directors would be able to bring their impartial business judgment to bear on a litigation demand." *United Food & Com. Workers Union & Participating Food Indus. Emp'rs Tri-State Pension Fund v. Zuckerberg*, 262 A.3d 1034, 1059 (Del. 2021). The Delaware Supreme Court recently refined the standard for evaluating allegations of demand futility. *See id.* at 1040–41. The refined standard is nevertheless consistent with previous standards and does not change the result of the analysis. *Id.* at 1040–41, 1058 (citing *Rales v. Blasband*, 634 A.2d 927 (Del. 1993); *Aronson v. Lewis*, 473 A.2d 805 (Del. 1984)). Courts ask the following three questions when evaluating allegations of demand futility: (1) whether the director received a material personal benefit from the alleged misconduct that is the subject of the litigation demand; (2) whether the director faces a substantial likelihood of liability on any of the claims that would be the subject of the litigation demand; and (3) whether the director lacks independence from someone who received a material personal benefit from the alleged misconduct that would be the subject of the litigation demand or who would face a substantial likelihood of liability on any of the claims that are the subject of the litigation demand. *United Food*, 262 A.2d at 1059. If the answer to any of these questions is "yes" for at least half of the members of the board, then

demand is excused as futile. *Id.* The Court concludes Plaintiff has plausibly alleged that, as to the new claims, demand would have been futile as the directors are interested in the challenged transactions because they were also on the TCI Board.

Pillar makes several other arguments regarding dismissal of Counts Five and Six, which involve the ICA. The ICA establishes a comprehensive regulatory scheme to regulate investment companies that provide mutual fund services. *Kamen v. Kemper Fin. Svcs., Inc.*, 500 U.S. 90, 93 (1991). The ICA was adopted due to Congress's concerns about the potential for abuse inherent in the structure of investment companies and the need to protect investors in these companies. *See Burks v. Lasker*, 441 U.S. 471, 480–81 (1979); *Securities & Exchange Comm'n v. Advance Growth Cap. Corp.*, 470 F.2d 40, 42 (7th Cir. 1972); *see also Herpich v. Wallace*, 430 F.2d 792, 815 (5th Cir. 1970). Under the ICA, investment companies "may register" by filing with the SEC a notification of registration. 15. U.S.C. § 80a-8(a). Investment companies that do not register with the SEC are forbidden from engaging in interstate commerce. *Id.* § 80a-7(a).

Plaintiff alleges Pillar turned IOR into an unregistered investment company and thus has caused IOR to violate the ICA in two ways. First, Plaintiff contends IOR was prohibited from engaging in any business in interstate commerce as an unregistered investment company, citing § 80a-7(a)(4). Plaintiff also contends IOR engaged in related-party transactions with TCI without prior SEC consent, in violation of § 80a-17. Plaintiff contends that because of these violations, it has the right to rescind the CMA under § 47(b). Section 47(b), titled "Validity of contracts," provides:

> (1) A contract that is made, or whose performance involves, a violation of this subchapter, or of any rule, regulation, or order thereunder, is unenforceable by either party . . . unless a court finds that under the circumstances enforcement would produce a more equitable result than

       nonenforcement and would not be inconsistent with the purposes of this subchapter.

  (2) To the extent that a contract described in paragraph (1) has been performed, a court may not deny rescission at the instance of any party unless such court finds that under the circumstances the denial of rescission would produce a more equitable result than its grant and would not be inconsistent with the purposes of this subchapter.

15 U.S.C. § 80a-46(b).

    Pillar contends Plaintiff's claims involving ICA violations should be dismissed for the following reasons: (1) there is no private right of action under § 47(b) of the ICA; (2) Plaintiff does not adequately allege that IOR is an investment company; (3) Plaintiff does not allege a violation of the ICA; (4) Plaintiff does not allege that Pillar caused IOR to violate the ICA; and (5) Plaintiff does not allege damages to IOR.

    Pillar first contends there is no private right of action, as opposed to action by the SEC, under ICA § 47(b). Citing cases out of the Third, Fourth, and Ninth Circuits, Pillar urges this Court to adopt the "majority view" that § 47(b) does not create a private right of action. *See UFCW Loc. 1500 Pension Fund v. Mayer*, 895 F.3d 695 (9th Cir. 2018); *Santomenno v. John Hancock Life Ins. Co. (U.S.A.)*, 677 F.3d 178 (3d Cir. 2012); *Steinberg v. Janus Cap. Mgmt., LLC*, 457 F. App'x 261 (4th Cir. 2011).[2] Plaintiff relies on a Second Circuit case in support of his contention that there is a private right of action under § 47(b). *See Oxford Univ. Bank v. Lansuppe Feeder, LLC*, 933 F.3d 99 (2d Cir. 2019).

    The Court notes that, although the opinion predates the addition of § 47(b) to the ICA, the Fifth Circuit has touched upon the issue of whether a private right of action exists for

---

[2] Pillar suggests the Sixth Circuit has endorsed this view as well. But in the case Pillar cites, the issue of whether there is a private right of action under § 47(b) was not before the Sixth Circuit because the plaintiffs did not appeal the district court's dismissal of their claim under § 47(b). *See Laborers' Loc. 265 Pension Fund v. iShares Trust*, No. 3:13-cv-00046, 2013 WL 4604183 (M.D. Tenn. Aug. 28, 2013), *aff'd*, 769 F.3d 399, 402 (6th Cir. 2014). The issue before the Sixth Circuit was whether ICA § 36(a) created a private right of action, and the court ruled that it did not. 769 F.3d at 407.

violations of the ICA. *See Herpich*, 430 F.2d at 813. In addressing whether the plaintiffs had standing, the court affirmed "the principle that private actions provide a necessary supplement to SEC action in the enforcement of the Investment Company Act." *Id.* at 815. Only persons showing injury of the type the ICA was meant to prevent, however, may be afforded a civil remedy by the Act. *Id.* The Fifth Circuit concluded the plaintiffs lacked standing to bring an action under the ICA when they failed to allege that either they or their corporation held any ownership interest in the investment company, but only claimed that the company was unregistered and dominated their corporation to their detriment. *See id.; see also Independent Inv. Protective League v. Sec. & Exch. Commission*, 495 F.2d 311, 312 (2d Cir. 1974).

For purposes of resolving the motion to dismiss, however, the Court will presume that § 47(b) creates a private right of action in this case and presume that Plaintiff has sufficiently alleged IOR is an investment company. Even so, the Court concludes Plaintiff has failed to state a claim for violation of the ICA or breach of contract based on ICA violations. A plaintiff asserting a claim under the ICA may seek relief under § 47(b) only after a violation of some other section of the Act has been established. *Highland Crusader Offshore Partners, L.P. v. Motient Corp.*, No. A-06-CA-540 LY, 2006 WL 3358425, at *9 (W.D. Tex. Nov. 17, 2006). Here, Plaintiff alleges violations of two sections of the ICA.

Plaintiff alleges violations of § 80a-7(a)(4) because IOR was not permitted to engage in interstate commerce as unregistered investment company. *See* 15 U.S.C. § 80a-7(a)(4) ("No investment company . . . unless registered under section 80a-8 of this title, shall . . . engage in any business in interstate commerce."). Pillar argues Plaintiff has failed to plausibly allege IOR engaged in interstate commerce. Plaintiff responds that IOR has

9

engaged in interstate commerce as a securities issuer and one whose stock is traded on a national securities exchange and due to a loan purchase agreement with a Colorado company.  Even if the Court assumes that Plaintiff has plausibly alleged IOR engaged in interstate commerce in violation of the ICA, the Court finds that Plaintiff has not established that the relief it seeks, rescission of the CMA, is an available remedy for such a violation.  The ICA provides that a contract that is made, or whose performance involves, a violation of this subchapter, or of any rule, regulation, or order thereunder, is unenforceable by either party.  Plaintiff has not demonstrated that the CMA, or the performance of the CMA, violates the ICA's alleged prohibition on interstate commerce.  The activities alleged to be in violation of the prohibition on interstate commerce are too tangential to the contract sought to be rescinded.  There is a distinction to be drawn between ICA violations that are "collateral or tangential" to the contract sought to be rescinded and those violations that are "inseparable from the performance of the contract." *See Hamilton v. Allen*, 396 F. Supp. 2d 545, 559 (E.D. Penn. 2005).  Rescission is inappropriate in the former case and appropriate in the latter.  *Id.* (citing *GFL Adv. Fund, Ltd. v. Colkitt*, 272 F.3d 189, 202 (3d Cir. 2001)).  Here, Plaintiff seeks to rescind the CMA that allows Pillar to invest IOR funds because IOR engaged in interstate commerce through the sale of stock and a Colorado real estate transaction.  The alleged engagement in interstate commerce is simply too attenuated from the CMA between Pillar and IOR to warrant rescission of that contract.

Second, Plaintiff alleges violations of § 80a-17 in connection with his allegations that an unregistered company is prohibited from doing business with related parties (such as TCI) without SEC permission.  The language in section § 80a-17 refers to "registered companies," not unregistered companies.  As such, Plaintiff has not plausibly alleged the

10

violation of this particular provision of the ICA. Because Plaintiff has not plausibly alleged a violation of that provision of the ICA, he has not shown he is entitled to relief under § 47(b). The Court concludes Plaintiff's Count Five and Six fail to state a claim.

The Court turns to Plaintiff's Count Seven in which Plaintiff alleges Pillar violated the CMA's requirement that it invest only IOR's excess funds. Under the CMA, Pillar is responsible for investment of "any excess funds" in IOR's accounts. Plaintiff alleges none of the funds invested by Pillar in TCI have ever been designated excess funds and that therefore Pillar breached the CMA by investing IOR's funds with TCI.

Pillar argues this claim should be dismissed because Plaintiff has not alleged any provision of the CMA that requires a designation of funds by the Board as excess. Under the CMA all funds are delivered to Pillar, which is responsible for payment of all payables and investment of all excess funds. The Court agrees with Pillar and concludes Plaintiff has failed to state a claim for breach of contract in Count Seven. The CMA does not contain any provisions about how funds are considered "excess." It does not provide that IOR's Board has to determine or designate that certain funds are excess. The Court notes that Plaintiff has not alleged that Pillar is failing to pay all payables prior to investing funds. Because Plaintiff has not plausibly alleged that the IOR Board must designate funds as excess prior to investment, Plaintiff has not stated a claim for breach of contract based on the failure to designate funds as excess.

Finally, Pillar asserts that Count Eight, involving a fidelity bond, should be dismissed. The Advisory Agreement provides that the Advisor (Pillar) "shall maintain a fidelity bond with a responsible surety company in such amount as may be required by the Directors from time to time, covering all directors, officers, employees, and any agents of the Advisor

handing funds of the Company." Plaintiff alleges Pillar breached the agreement by failing to obtain a fidelity bond to protect the IOR funds in its custody or control. Alternatively, Plaintiff asserts a claim against the TCI/IOR Directors, Munselle, Butler, Jakuszewski, and Roberts, for breach of fiduciary duty based on their failure to direct Pillar to obtain a fidelity bond.

Pillar argues it cannot be held liable for failing to perform an obligation that was never triggered under the Advisory Agreement. The Court agrees. The relevant language of the agreement does not require a fidelity bond under all circumstances. Under the plain language of the agreement, a bond is only required "as may be required by the Directors from time to time." Plaintiff has not alleged that the Directors required a bond and Pillar failed to maintain one. Plaintiff has failed to state a claim for breach of the bond provision in the Advisory Agreement.

Plaintiff has also failed to state its alternative claim that the Directors breached their fiduciary duty by failing to direct Pillar to obtain a fidelity bond. To hold a director or officer individually liable for breach of the fiduciary duty of loyalty, a shareholder must prove the breach involved intentional misconduct, fraud, or a knowing violation of law. *In re Amerco Derivative Litig.*, 252 P.3d 681, 701 (Nev. 2011). Plaintiff merely alleges that "to the extent that IOR's directors failed to direct Pillar to obtain a Fidelity Bond, they are in breach of fiduciary duty." There are no factual allegations to establish that each of the four TCI/IOR Directors committed intentional misconduct, fraud, or a knowing violation of the law. Plaintiff has failed to plead a plausible claim for breach of fiduciary duty in Count Eight.

Because Plaintiff failed to meet the pleading requirements for his new claims, they are dismissed. Courts, however, generally allow a plaintiff one opportunity to amend a

deficient pleading before dismissing with prejudice. Therefore, Plaintiff is granted leave to file, within **twenty-one days** from the date of this Order, an amended complaint if he can, in good faith, replead facts to support the claims asserted in Counts Five through Eight. *See* FED. R. CIV. P. 15(a)(2).

Plaintiff has moved for summary judgment on Count Seven. Because the Court has determined that Plaintiff has failed to state a claim for breach of contract in Count Seven, the Court finds that Plaintiff's motion for summary judgment on that Count is moot.

**SO ORDERED**.

Signed March 16, 2022.

Ada Brown
UNITED STATES DISTRICT JUDGE